NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
NAJEE KELSEY,                          :
                                       :
       Petitioner,                 :  Civ. No. 19-10958 (RMB)
                                       :
  v.                                   :
                                       :
BRUCE DAVIS, et al.,                   :  **OPINION**
                                       :
       Respondents.                :
_____:

BUMB, District Judge

I. INTRODUCTION

Petitioner, Najee Kelsey, is a state prisoner currently incarcerated at the New Jersey State Prison in Trenton, New Jersey. He is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Pet., Dkt. No. 1.) For the following reasons, the habeas petition is denied without prejudice as unexhausted. A certificate of appealability shall not issue.

II. FACTUAL AND PROCEDURAL BACKGROUND

The factual background giving rise to Petitioner's judgment of conviction was aptly explained by the New Jersey Superior Court, Appellate Division on Petitioner's direct appeal as follows:

> The evidence adduced at trial revealed that on May 20, 2008, at approximately 2:00 p.m., a neighbor of Tanisha Tull was coming home from school when her attention was drawn to a man, ultimately identified as defendant, banging loudly on Tull's door. Through her window, the

neighbor observed the door open slightly and heard a verbal dispute between defendant and Tull, before defendant pushed through the door and into the apartment. The neighbor heard Tull repeatedly scream, "get off me, get out of my house, leave me alone." The screaming continued for a few minutes before the apartment fell silent. Another neighbor witnessed the same exchange and also heard Tull's screams.

Later that day, defendant went to the property manager's office claiming he was locked out of Tull's apartment and needed a key. Because he was not on the lease, the manager refused to issue him a key and defendant left. Later, after being told of the earlier incident, the manager went to Tull's apartment and knocked on the door. When no one answered, he called the police.

Somers Point Police Officer Michael Price arrived on scene and entered the apartment with the manager. Although the rooms were neat and orderly, Price noted there was a dent on the outside door and the chain lock had been ripped from the door frame. He examined Tull's cellphone and found repeated calls from defendant that were made the night before and earlier that morning. In the bedroom, Price found Tull's lifeless body "tucked in" under the bedcovers. Her neck and chin area bore marks consistent with strangulation.

Meanwhile, Atlantic City Police Sergeant Andre Corbin received a call from defendant's father, who expressed concern that something had occurred and agreed to allow police to monitor a phone call between him and his son. During the call, defendant stated there had been an incident between him and Tull, and that Tull had been injured. Corbin arranged to meet defendant. Defendant told Corbin that when he arrived at Tull's apartment, it appeared as though someone had broken into the residence. He found Tull unconscious on the bedroom floor. Corbin transported defendant to

> the prosecutor's office to provide a statement.
>
> In a videotaped statement that was played for the jury, defendant initially repeated the story of discovering Tull's lifeless body in her apartment after an apparent break-in. However, defendant recanted that version of events and told police that Tull was alive when he arrived at her apartment. Tull opened the door slightly, leaving the door chain in place, and refused to let him into the apartment. The couple argued, and eventually defendant "barged in[to the apartment,]" breaking the door chain and angering Tull. He alleged that Tull punched him in the face and attempted to choke him with his hooded sweatshirt. Defendant said that he tried to restrain Tull, but when she swung at him again, he choked her.
>
> Defendant explained that Tull regained consciousness but was having difficulty breathing and did not have a "full pulse." Defendant claimed she was speaking and moving around the apartment. When defendant left, Tull had slipped into unconsciousness but still had a heartbeat and pulse. Defendant intended to return to the apartment to check on her, but accidentally let the door close and lock behind him.
>
> The medical examiner explained Tull's injuries observed at the autopsy and opined that the cause of death was strangulation. Defendant elected not to testify and called no witnesses.

!
*State v. Kelsey*, No. A-3891-13T3, 2016 WL 3222008, at *1–2 (N.J.

Super. Ct. App. Div. June 13, 2016). Petitioner

> was convicted of first-degree murder, *N.J.S.A.* 2C:11-3(a)(1) and (2) (count one); felony murder, *N.J.S.A.* 2C:11-3(a)(3) (count two); and burglary, *N.J.S.A.* 2C:18-2 (count three). On count one, the judge sentenced defendant to

3

> sixty years in prison with an 85% parole disqualifier pursuant to the No Early Release Act (NERA), *N.J.S.A.* 2C:43-7.2. [The trial court] imposed the same sentence to run concurrently on count two and merged count three into count two.

*Kelsey*, 2016 WL 3222008, at *1. Petitioner raised the following issues on direct appeal:

> *POINT I*
> THE JURY INSTRUCTION FAILED TO PROPERLY ASSIGN THE BURDEN OF DISPROVING PASSION/PROVOCATION TO THE STATE, AND THE PROSECUTOR'S COMMENTS IN OPENING AND SUMMATION INDICATED THAT THE BURDEN WAS ON THE DEFENDANT. (Not Raised Below)
>
> *POINT II*
> MULTIPLE INSTANCES OF PROSECUTORIAL MISCONDUCT DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (Not Raised Below)
>     A. By Stating That No Society With a "Sense of Social Justice" Would Return a Verdict of Passion/Provocation Manslaughter, the Prosecutor Made an Improper "Call To Arms" That Denied the Defendant His Right to a Fair Trial.
>     B. The Prosecutor's Repeated Efforts to Emphasize the Victim's Virtues and the Defendant's Moral Flaws, and To Elicit Sympathy for the Former and Enmity for the Latter, Also Denied the Defendant a Fair Trial.
>
> *POINT III*
> THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ERRONEOUSLY ADMITTED A "LINEUP" OF POLICE PHOTOGRAPHS THAT INCLUDED DFENDANT'S PHOTOGRAPH, AND THIS ERROR WAS COMPOUNDED WHEN THE COURT FAILED TO PROVIDE THE MODEL CHARGE ON POLICE PHOTOGRAPHS. (Not Raised Below)

4

>  *POINT IV*
>  THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED DEFENDANT A FAIR TRIAL. (Not Raised Below)
>
>  *POINT V*
>  THE MURDER AND FELONY MURDER CONVICTIONS SHOULD HAVE MERGED, AND BECAUSE THE PRIMARY BASES FOR THE TRIAL COURT'S IMPOSITION OF A [SIXTY] YEAR NERA SENTENCE WERE A SOCIAL PHENOMENON OUTSIDE THE RECORD AND GENERAL DETERRENCE, THE CASE SHOULD BE REMANDED FOR RESENTENCING
>  >  A. The Murder and Felony Murder Convictions Should Have Merged
>  >  B. Because the Primary Bases for the Trial Court's Imposition of a [Sixty] Year NERA Sentence Were a Social Phenomenon Outside the Record and General Deterrence, the Case Should be Remanded for Resentencing

*Kelsey*, 2016 WL 3222008, at *1. The Appellate Division affirmed except that it remanded for resentencing to reflect merger of counts one and two as well as for resentencing on count three. "The judge resentenced [petitioner] on January 11, 2017, and entered an amended JOC on January 20, 2017, that imposed an aggregate sixty-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2." *State v. Kelsey*, No. A-2248-17T3, 2018 WL 6756333, at *1 (N.J. Super. Ct. App. Div. Dec. 26, 2018), *cert. denied*, 211 A.3d 719 (N.J. 2019). The New Jersey Supreme Court denied certification on Petitioner's direct appeal. *See State v. Kelsey*, 151 A.3d 982 (N.J. 2016).

Petitioner then filed a petition for post-conviction relief ("PCR"). Petitioner raised several ineffective assistance of counsel claims in that PCR petition, "namely counsel failed to 1) communicate adequately with [Petitioner]; 2) provide and review discovery with [Petitioner]; 3) adequately represent [Petitioner] during plea negotiations; and 4) make pertinent objections to the prosecutor's opening statement and summation at trial." *Kelsey*, 2018 WL 675633, at 1. The Superior Court denied the PCR petition from the bench and in a subsequent order on October 26, 2017 and November 1, 2017, respectively.  (*See* Tr. Oct. 26, 2017, Dkt. No. 5-5 at 12-17; Order Nov. 1, 2017, Dkt. No. 5-14.) The Appellate Division affirmed on appeal. *See Kelsey*, 2018 WL 675633. The New Jersey Supreme Court denied certification on Petitioner's PCR petition. *See Kelsey*, 211 A.3d 425.

In April, 2019, Petitioner filed his federal habeas petition. He asserts that he received ineffective assistance of counsel and that his due process rights were violated. More specifically, Petitioner claims that he was denied his constitutional rights when his counsel failed to investigate the circumstances surrounding his arrest. This includes counsel's purported failure to file a suppression motion because the police officer was on the

6

phone when Petitioner spoke to his father but failed to give Petitioner *Miranda*[1] warnings.

Respondents filed a response in opposition to Petitioner's habeas petition. (*See* Resp. to Pet., Dkt. No. 5.) Respondents argue that Petitioner's claims should be denied because they are unexhausted and/or are procedurally defaulted. Petitioner did not file a reply.

   III. DISCUSSION

Section 2254 provides that a writ of habeas corpus "shall not be granted" unless (1) "the applicant has exhausted the remedies available in the courts of the State," or (2) "there is an absence of available State corrective process," or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Henderson v. Frank,* 155 F.3d 159, 164 (3d Cir. 1998); *Toulson v. Beyer,* 987 F.2d 984, 987–89 (3d Cir. 1993). Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "Thus, ... if the petitioner fails to satisfy the exhaustion requirement prior to filing a federal

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

habeas petition and none of the exceptions apply, the federal court is precluded from granting habeas relief to the petitioner." *Lambert v. Blackwell,* 134 F.3d 506, 513–14 (3d Cir. 1997).

To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999); *see also Baldwin v. Reese,* 541 U.S. 27, 29 (2004). To exhaust, a petitioner in New Jersey state custody must fairly present his federal claims to the Superior Court of New Jersey, Law and Appellate Divisions, and to the New Jersey Supreme Court. *See Toulson,* 987 F.2d at 987–89. To properly exhaust a claim, "the petitioner must have 'present[ed] a federal claim's factual and legal substance to the state courts in a manner that put[ ] [the state courts] on notice that a federal claim [was] being asserted.'" *Robinson v. Superintendent, SCI Somerset*, 722 F. App'x 309, 312 (3d Cir. 2018) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223–24 (3d Cir. 2001), or, when an issue is properly asserted in the state system but not addressed on the

merits because of an independent and adequate state procedural rule, *See McCandless*, 172 F.3d at 260. New Jersey provides a time constraint for a petitioner to file PCR petitions as follows:

> (1) *First Petition For Post-Conviction Relief.* Except as provided in paragraphs (a)(2), (a)(3), and (a)(4) of this rule, no petition shall be filed pursuant to this rule more than 5 years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction that is being challenged unless:
>     (A) it alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice; or
>     (B) it alleges a claim for relief as set forth in paragraph (a)(2)(A) or paragraph (a)(2)(B) of this rule and is filed within the one-year period set forth in paragraph (a)(2) of this rule.
>
> (2) *Second or Subsequent Petition for Post-Conviction Relief.* Notwithstanding any other provision in this rule, no second or subsequent petition shall be filed more than one year after the latest of:
> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or
> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

9

> (C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

N.J. Ct. R. 3:22-12.

Petitioner never raised a standalone *Miranda* claim or ineffective assistance of counsel claims related to *Miranda* warnings either on direct appeal or during his PCR proceedings. Thus, his habeas petition is fully unexhausted.[2] While Petitioner did bring ineffective assistance of counsel claims in his PCR petition, '"[s]imply because a petitioner brings a claim of ineffective assistance of counsel" does not mean that "every claim counsel is allegedly deficient for failing to raise necessarily has been fairly presented to the state court[.]'" *Mathis v. Attorney Gen. of New Jersey*, 732 F. App'x 138, 141 (3d Cir. 2018) (quoting *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 480 n.6 (3d Cir. 2017). Indeed, the ineffective assistance of counsel claims raised in the PCR proceedings would not have put the state on notice that Petitioner was intending to bring

---

[2] As noted above, there are some very limited exceptions for Petitioner to bring a second PCR petition. Given these exceptions, no matter how remote, it is at least theoretically possible for Petitioner to return to state court to try and exhaust the claims raised in this habeas petition. This Court takes no position on whether Petitioner would be successful if such a PCR petition is brought. Nevertheless, given its possibility, this Court determines that Petitioner's claims are not procedurally defaulted at this time.

10

ineffective assistance of counsel claims related to a purported lack of *Miranda* warnings. Thus, the claims in the habeas petition are completely unexhausted.

Respondents raised the issue of a lack of exhaustion in their response brief. Petitioner therefore had an opportunity to file a response to show why his claims are not unexhausted. He failed to do so.[3] Petitioner's habeas petition is denied without prejudice as it is fully unexhausted. *See Bustillo v. Nardelli*, No. 18-13367, 2019 WL 113719, at *2 (D.N.J. Jan. 4, 2019) (citing *Mathis*, 732 F. App'x at 141-42; *Mallory v. Bickell*, 563 F. App'x 212, 215 (3d Cir. 2014)) (denying without prejudice § 2254 habeas petition that is fully unexhausted). If the Court has misconstrued Petitioner's silence, and there is evidence this Court has overlooked, Petitioner may file a motion for consideration under the Court's Local Rules.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

---

[3] Petitioner makes no argument whatsoever that this Court should stay and abey these proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).

11

2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), the United States Supreme Court held: "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

V. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is denied without prejudice as unexhausted. A certificate of appealability shall not issue. An appropriate order will be entered.

DATED: September 1, 2020	s/Renée Marie Bumb
	RENÉE MARIE BUMB
	United States District Judge